## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### POWERS AND OTHERS V. CITY OF RICHMOND.

#### January 24, 1918.

1. TAXATION—*Municipal Corporation—Constitutional Law.*—The act of March 6, 1900 (Acts 1899-1900, p. 944, ch. 864), entitled an act to amend and re-enact certain sections of the act of May 24, 1870, providing a charter for the city of Richmond and the acts amendatory thereof, is not invalid as being in conflict with section 16, Article X, of the Constitution of 1869, or with section 50 of the Constitution of 1902. These constitutional provisions are substantially similar, providing that every law which imposes, continues or revives a tax, shall distinctly state the tax and the object to which it is to be applied, and a reference to any other law to fix such tax or object shall not be sufficient. The act referred to simply extends the lien of the city of Richmond for taxes and neither imposes, continues nor revives a tax.

2. TAXATION—*Constitutional Law Section 16, Article X, of the Constitution of 1869, Section 50 of the Constitution of 1902.*— These provisions that a law which imposes, continues or revives a tax shall distinctly state the tax and the object to which it is applied, apply only to ordinary and general taxes for State purposes, and such as are imposed generally on all the taxable property in the State, and not to local taxes for local purposes. From the earliest date, the local authorities in the counties and cities of the Commonwealth have by the General Assembly been authorized to impose local taxes, and fix the rates thereof.

3. TAXATION—*Assessment—Life Tenant and Remainderman.*—Under section 465, Code 1904, property is properly assessed for taxation in the name of the life tenant, and when so assessed the taxes constitute a lien on the property.

TAXATION—*Municipal Corporations—Constitutional Law—Section 117 of the Constitution of 1902.*—The act of March 6, 1900 (Acts 1899-1900, p. 944, chapter 864), entitled an act to amend and re-enact certain sections of the act of May 24, 1870, providing a charter for the city of Richmond and the acts amendatory thereof, securing to the city a lien on the

interest of a remainderman in property assessed to the life tenant, is not unconstitutional as violative of section 168 of the Constitution of 1902, in view of section 117 of the Constitution of 1902, preserving municipal charters.

5. MUNICIPAL CORPORATIONS—*Constitutional Law—Effect of Constitution of 1902 on Municipal Charters.*—Many charters existed in Virginia at the time the new Constitution was adopted, and many of them had and still have special provisions; and section 117 of the Constitution was clearly intended to continue all such special acts, except in so far as they were repealed by the Constitution or by the General Assembly. In addition to this, section 1 of the schedule of the Constitution expressly preserves all existing statutes which are neither repugnant to the Constitution nor expressly repealed.

6. STATUTES—*Objects Expressed in Title—Extending Lien of City.*—The act of March 6, 1900 (Acts 1899-1900, p. 944, chapter 864), is not void because violative of section 52, Constitution of 1902, which provides that no law shall embrace more than one object, which shall be expressed in its title. The title of that act expressly states that it relates to the lien of the city for taxes assessed on real estate, and to the sale thereof for non-payment of taxes, and that a statute with such a title is sufficient to sustain the provision that the lien of the city for taxes shall be on the land and every interest therein is manifest.

7. TAXATION—*Due Process of Law.*—The act of March 6, 1900 (Acts 1899-1900, p. 944, chapter 864), providing that the lien of the city of Richmond for taxes shall be on the land and every interest therein, is not unconstitutional as violating the fourteenth amendment of the Constitution of the United States. Where a tax is levied on property according to its value, the law must afford an adequate method for the correction of errors, and where this is done it constitutes due process of law, and the due process clause of the fourteenth amendment is satisfied if an opportunity be given to all those who are interested to question the validity of the amount of the tax either before that amount is ascertained, or in subsequent proceedings for its correction.

8. TAXATION—*Municipal Corporations—Limitation of Time Within Which City of Richmond May Enforce Lien.*—There is no limitation on the time within which the city of Richmond may enforce the lien which it has under its charter for taxes assessed by the city on real estate; the city charter prescribes no limit.

42

Appeal from a decree of the Chancery Court of Richmond, in which the city of Richmond was allowed to file its petition. Decree for the petitioner. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Robert H. Talley,* for the appellants.

*H. R. Pollard,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

The city of Richmond filed its petition in the pending cause of *Powers* v. *Powers,* alleging that certain property known as No. 3116 east Broad street, Richmond, Va., had been purchased by direction of the court in that cause for the use of Annie I. Talley (who was the widow of Jefferson Powers, deceased), during her life, with remainder to the appellants, his children; and asserting the claim of the city to a lien for $774.61 and interest, alleged to be due for taxes thereon from 1905 to 1915, inclusive. These taxes had accrued during the time the property was held and occupied by Mrs. Powers, the life tenant. The appellants filed an answer to that petition, denying the existence of the lien for taxes against their interests as remaindermen, and denying that the taxes claimed had been legally or properly assessed upon the property, as well as the authority of the city to levy therefor, insisting that the taxes were a lien upon the life estate only, and that the provisions of the charter of the city under which the claim for taxes is based are violative of both the Federal and State Constitutions.

The property having been sold under decree of court, a sufficient sum was retained to satisfy the claim of the city.

The trial court determined that the city was entitled to the amount of the taxes claimed, entered its decree to this effect, and from that decree this appeal was taken.

The claim of the city is based upon an act approved March 6, 1900 (Acts 1899-1900, p. 944), entitled an Act to amend and re-enact sections 75, 76, 78, 79, 80, 82 and 83, of the act approved May 24, 1870, providing a charter for the city of Richmond and the acts amendatory thereof, relating to the lien of the city for taxes assessed as real estate, and to the sale thereof for non-payment of taxes. These amendments to the charter of the city were passed at the session of the legislature immediately succeeding the decision of the case of *Tabb* v. *Commonwealth,* 98 Va. 47, 34 S. E. 946, 51 L. R. A. 283, which held that neither State nor city taxes assessed on real estate held by a life tenant constituted a lien upon the interest of the remaindermen in property so assessed. The avowed purpose of securing these amendments to the charter was to secure to the city a lien on such interests, and to this end section 75 provides, that there shall be a lien on all real estate and on each and every interest therein for city taxes assessed thereon from the commencement of the year for which they are assessed; section 79, that any person having an interest in such real estate by way of reversion, remainder or otherwise, may redeem the same, if the land has been sold for such taxes; section 82, that nothing in that section shall be construed to affect or impair the lien of the city on said real estate, and on each and every interest therein, or to affect, limit or impair the right of the city when it becomes a purchaser of such real estate at a delinquent tax sale; and section 83, that the city may, at any time, elect to enforce its lien for such taxes in a court of equity. There can be no doubt whatever that this act, if valid, fully sustains the decree of the trial court.

1. It is claimed by the appellants, among other things, that this act was invalid at the time of its adoption, because section 16, of Article X, of the Constitution of 1869, provides that "Every law which imposes, continues or revives a tax, shall distinctly state the tax, and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or object," as well as under section 50 of the present Constitution (Code 1904, p. ccxx), which provides that, "Every law imposing, continuing or reviving a tax shall specifically state such tax, and no law shall be construed as so stating such tax which requires a reference to any other law or any other tax." These sections are substantially similar, so that it may be said that if invalid under that section of the present Constitution it was invalid under the former Constitution. We cannot, however, accept the suggestion that either of these sections is in conflict with the act referred to. The act simply relates to the lien of the city for taxes. It neither imposes, continues nor revives a tax, and so the constitutional provisions referred to do not affect the question. While we think the language of the two Constitutions is sufficient thus to settle this question, it is nevertheless not difficult to find authority to sustain that construction.

In 37 Cyc. at p. 228, this is said: "The Constitutions of several States provide that every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied. It is held, however, that this applies only to the ordinary and general taxes for State purposes, and such as are imposed generally on all the taxable property in the State, and not to local taxes for local purposes, or to special taxes on peculiar kinds of property, or such as are in the nature of license or occupation fees; nor does the provision apply to laws which merely provide or regulate the machinery for assessing and collecting the tax." The notes to the text refer to many authorities which sustain it.

To uphold the position of counsel for the appellants would be to disrupt a system of taxation which has always been in force in Virginia, and as we believe in most of the States of the Union. From the earliest date, the local authorities in the counties and cities of the Commonwealth have by the General Assembly been authorized to impose local taxes, and fix the rates thereof.

In *Gilkeson* v. *Frederick Justices,* 13 Gratt. (54 Va.) 583, this is said: "The power of the General Assembly to confer authority on county courts, city councils, corporations and other organized bodies to impose local taxes for local purposes, had been exercised from the adoption of the first Constitution down to the formation of the last. The rates and subjects of taxation were different in many instances, if not in all; the powers conferred were not always the same, but were varied to meet the exigencies of particular circumstances, and frequently were left to the discretion of the body on which they were conferred. All this was known to the convention; yet no explicit provision was inserted in the Constitution changing this power of the General Assembly. Surely if a change in the whole scheme of local taxation was intended, the convention would have expressed the intention in plain terms, and not have left us to arrive at it by a forced construction."

In *Henrico County* v. *City of Richmond,* 106 Va. at p. 296, 55 S. E. at p. 688 (117 Am. St. Rep. 1001), this is said: "If there is any sovereign power universally recognized as legislative in its character, it is the power to levy taxes; and yet this court has held that the General Assembly had power to confer upon the county courts authority to levy taxes for local purposes." Citing, *In re County Levy,* 5 Call 139; *Harrison Justices* v. *Holland,* 3 Gratt. (44 Va.) 247; *Gilkeson* v. *Frederick Justices,* 13 Gratt. (54 Va.) 583.

The inconvenience of any other construction is perfectly apparent. The legislature would be driven to the necessity

of making such local rates uniform in the various counties and cities of the Commonwealth, for it would be without the information to enable it to pass laws providing for the various rates of taxation necessary in order to meet the varying local needs.

There have been several cases in Virginia holding that municipalities with charters like that of the city of Richmond, have general powers of taxation, with power to tax all subjects within their jurisdiction, even though the State does not levy a tax upon such subjects. *City of Norfolk* v. *Norfolk Landmark,* 95 Va. 564, 28 S. E. 959; *Newport News, etc., Co.* v. *Newport News,* 100 Va. 157, 40 S. E. 645; *Woodall* v. *Lynchburg,* 100 Va. 318, 40 S. E. 915; *Myers, Receiver* v. *Richmond,* 110 Va. 605, 66 S. E. 826.

There can be no doubt, then, that the sections of the Constitution above referred to do not restrain the legislature to the extent asserted, and that that legislation is not invalid under these sections of either the old or the new Constitution. This statute simply extends a lien, and does not relate to the imposing, continuing or reviving of taxes.

2. It is also claimed that in order for the lien to attach there must have been a valid assessment, and this of course is true; and that because the property was assessed for taxation in the name of the life tenant, therefore, it could not affect the interest of the remaindermen. It must be remembered, however, that it is an assessment of the property itself which is involved.

Section 465 of the Code provides: "In the table of tracts of land the commissioner shall enter each tract separately, and set forth in as many columns as may be necessary the name of the person who by himself or his tenant has the freehold in possession, his place of residence, the nature of his estate, whether in fee or for life, the number of acres in the tract," etc.

It is the value of land that is assessed, and under the statute must be assessed in the name of the person who by himself or his tenant has the freehold in possession. He it is who under the Virginia statutes is assessed with the property, and it is well settled that if the person so assessed has an estate for life, it is his duty to pay the taxes.

In Cooley on Taxation, Vol. I, pages 731-2, this is said: "By the owner of property for purposes of taxation is meant the legal and not the equitable owner; therefore, trustees having the legal title are properly assessed. * * * A life tenant should be assessed as owner during the continuance of the life estate." And in Vol. I, pages 866-7, this author also says: "Not only is it competent for the State to charge land with a lien for the taxes imposed thereon, but the legislature may, if it shall deem it proper or necessary to do so, make the lien a first claim on the property with precedence of all other claims and liens whatsoever. * * * When that is done the lien does not stand on the same footing with an ordinary encumbrance, but attaches itself to the *res* without regard to individual ownership."

In Burroughs on Taxation, p. 223, the same rule is thus stated: "In the assessment of a general tax, the law does not regard the different interests in the assessment. It looks to the person having the present right of enjoyment of the land to be assessed, whether tenant for life or years, for the tax on the fee simple value of the land, and such person is the one to be assessed with the land."

"The word 'owner' includes any person who has the usufruct, control or occupation of the land, whether his interest in it is an absolute fee, or an estate less than a fee." 17 Am. & Eng. Ency. L: (1st ed.), 299, 300, approved in *Richmond* v. *Williams*, 102 Va. 733, 740, 47 S. E. 844.

In *Osterburg* v. *Union Trust Co.*, 93 U. S. 428 (23 L. Ed. 965), this is said: "A lien for taxes does not, however, stand upon the footing of an ordinary encumbrance; it is

not displaced by a sale under pre-existing judgment or decree, unless otherwise directed by statute. It attaches to the *res,* without regard to individual ownership, and when it is enforced by sale, pursuant to statute prescribing the mode of assessing and collecting, then the purchaser takes a valid unimpeachable title."

Section 128 of the Constitution (Code 1904, p. ccxliii), which simply follows a statute which had long been in force in Virginia, requires that in cities and towns the assessment of property, real and personal, for purposes of municipal taxation, shall be the same as the assessment thereof for purposes of State taxation.

So, then, under the Virginia statute, the property was properly assessed, in the name of the life tenant, and if properly assessed, the taxes constitute a lien thereon.

3. It is claimed, however, that the statute is unconstitutional and void because of section 168 of the Constitution (Code 1904, p. cclxii), which reads thus: "All property, except as hereinafter provided, shall be taxed; all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

This question has been settled in this State in the case of *Standard Oil Company* v. *City of Fredericksburg,* 105 Va. 87, 52 S. E. 817. In that case the city of Fredericksburg assessed a license tax upon the oil company, by virtue of its authority under its charter. The company contended that the license tax was unconstitutional, invalid and void because of sections 117, 168 and 170 of the Constitution of Virginia (Code 1904, pp. ccxxxviii, cclxii).

Section 117 at that time provided: "General laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner pro-

vided in article four of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house. But each of the cities and towns of the State having at the time of the adoption of this Constitution a municipal charter may retain the same, except so far as it shall be repealed or amended by the General Assembly; provided, that every such charter is hereby amended so as to conform to all the provisions, restrictions, limitations and powers set forth in this atricle, or otherwise provided in this Constitution.''

And section 170 authorizes the State to levy a license tax upon any business which cannot be reached by the *ad valorem* system.

In the opinion in that case, this appears: "The power of the city to levy the licenses in these two cases is denied, because, since the State exacts no such license, and since section 168 of the Constitution provides that the license tax 'shall be levied and collected under general laws,' that if the city ever had the power under its charter, that power is taken away by section 117 of the Constitution, which amends the charter of the city to conform to section 168 of the Constitution, and that such a license could be required only under *general law* thereto especially authorizing all the cities of the Commonwealth to levy such a license tax.

"This contention has been decided against the plaintiff company by the Supreme Court of Appeals of Virginia in *Hick's* v. *Bristol,* 102 Va. 861, 47 S. E. 1001, and in *Arey* v. *Lindsay,* 103 Va. 250, 48 S. E. 889. In this latter case the court says: 'There is no indication of a purpose to repeal existing laws, valid when passed, whether special enactment or otherwise.'

"The manifest purpose of the authors of the Constitution 'was to meet and obviate the evils attending the passage of special acts' and that 'the Constitution did not intend to abrogate a charter or any part of it,' because it had been

43

passed as a 'special act, but only such features of the charter as were in conflict with the Constitution, and to forbid special acts in the future.' "

Many charters existed in Virginia at the time the new Constitution was adopted, and many of them had and still have special provisions; and section 117 of the Constitution was clearly intended to continue all such special acts, except in so far as they were repealed by the Constitution or by the General Assembly. In addition to this, section 1 of the Schedule of the Constitution (Code 1904, p. cclxxiii) expressly preserves all existing statutes which are neither repugnant to the Constitution nor expressly repealed.

4. It is also contended that the statute referred to is void because violative of section 52 of the Constitution (Code 1904, p. ccxxi), which provides, that "No law shall embrace more than one object, which shall be expressed in its title." It is sufficient to say as to this, that the title of this act expressly states that it relates to the lien of the city for taxes assessed on real estate, and to the sale thereof for non-payment of taxes, and that a statute with such a title is sufficient to sustain the provision that the lien of the city for taxes shall be on the land and every interest therein is manifest. *Commonwealth* v. *Chesapeake & Ohio Ry. Co.,* 118 Va. 267, 87 S. E. 622.

5. It is further contended that the act is violative of the fourteenth amendment of the Constitution of the United States.

Judge Cooley, in his work on Taxation, at pp. 55-6, says this: "In order to bring taxation imposed by a State, or under its authority, within the scope of the provision of the fourteenth amendment, which prohibits the deprivation of property without due process of law, the case should be so clearly and palpably an illegal encroachment upon private rights as to leave no doubt that such taxation, by its necessary operation, is really spoliation under the power to tax.

A State has the right to devise its own system of taxation free from Federal interference." *Richmond* v. *Williams*, 102 Va. *supra.*

In *Turpin* v. *Lemon,* 187 U. S. 51, at p. 58, 23 Sup. Ct. 20, at p. 23, 47 L. Ed. 70, it is said that, "Laws for the assessment and collection of general taxes stand upon somewhat different footing and are construed with the utmost liberality, sometimes even to the extent of holding that no notice whatever is necessary."

In *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 Sup. Ct., 533, 33 L. Ed. 895, it is said, that taxation does not require the same kind of notice as is required in suits at law; and that "it involves no violation of due process of law when it is executed according to the customary forms and established usages, or in subordination to the principles which underlie them."

This principle may be gathered from numerous cases, that where a tax is levied on property according to its value, the law must afford an adequate method for the correction of errors, and where this is done it constitutes due process of law, and that due process clause of the fourteenth amendment is satisfied if an opportunity be given to all those who are interested to question the validity of the amount of the tax either before that amount is ascertained, or in subsequent proceedings for its correction.

Section 444 of the Code of Virginia provides opportunity for a hearing and an adequate method for the correction of errors. That section now reads: "Any person feeling himself aggrieved by the assessment of his lands or lots may, upon giving notice to the assessor and to the attorney for the Commonwealth, apply to the circuit court of the county or corporation court of the corporation in which the land lies, at any time prior to the first day of February of the second year after such assessment, and not after, to have the assessment of his lands and lots corrected," etc.

The property here involved was as well the property of the remaindermen as the property of the life tenant, and it is for the benefit of the remaindermen that it is assessed in the name of the life tenant, and that the law imposes a personal liability therefor upon him as well as the duty of paying the taxes as they accrue; but if the life tenant fails in that duty, such failure cannot relieve the property of the remaindermen from the lien, though they are not personally liable for the taxes. Their property is liable, and section 168 of the Constitution requires that all property shall be taxed. So that the results in this case are strictly in accord with the intent of the Constitution, and to relieve the property in this case would be to exempt the estate of the remaindermen from taxation during the period when the life tenant held it.

In the case of *Powell's Ex'r* v. *City of Richmond*, 94 Va. 79, 26 S. E. 389, it was held that there is no limitation on the time within which the city of Richmond may enforce the lien which it has under its charter for taxes assessed by the city on real estate; that the city charter prescribes no limit.

The determination of the case then depends upon whether or not the act first herein referred to is still in effect, and as to this we have no doubt whatever. The city of Richmond has a lien under its charter for the taxes upon the land itself and upon every interest therein; so that the decree will be affirmed.

*Affirmed.*