# Richmond

## James E. Lowery v. City of Norfolk.

April 15, 1942.

Record No. 2488.

Present, Campbell, C. J., and Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Henry Bowden* and *A. J. Winder*, for the appellant.

*Jonathan W. Old, Jr.* and *Alfred Anderson*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Thomas Lowery, the father of the appellant, by his last will and testament, devised certain real estate in the city of Norfolk to his daughter, Susan, for life, with the remainder to his surviving children. This real estate was assessed for taxation in the name of the life tenant from the year 1909 to and including the year 1934. She failed to pay the city taxes so assessed for the years 1929 through 1934. Upon the death of the life tenant in the latter year, James E. Lowery, the sole surviving child of the testator, became the fee simple owner of the land.

The city of Norfolk instituted garnishment proceedings against James E. Lowery to enforce the payment of the unpaid taxes assessed against his sister which accrued during her life tenancy. Contending that the taxes did not constitute valid claims and enforceable liens against his estate in the land and that the tax records of the city showing them to be unpaid affected the marketability of the land, Lowery filed a bill in equity against the city praying the court to quiet his title by removing the cloud thereon.

The city dismissed its garnishment proceedings and answered the bill. It claimed that the unpaid taxes, with interest and penalties, constituted a lien on appellant's real estate and on each and every interest therein; and being lawfully assessed, it had no right or authority to mark the same off its tax books unless they were paid; and that said lien continued on the land after the death of the life tenant.

The case was heard upon the bill and answer. The trial court sustained the city's contention.

The question for our consideration is essentially one which affects the title of the appellant. We must determine the extent and enforceability of the city's lien for unpaid tax assessments levied during the lifetime of the life tenant. The lien is only good to the extent of its enforcement. If it is not enforceable against the estate of the remainderman in the land, it constitutes a cloud upon his title.

The several Virginia decisions bearing on the question before us are not in conflict. The two leading cases are *Tabb*

v. *Commonwealth*, 98 Va. 47, 34 S. E. 946, 51 L. R. A. 283; and *Powers* v. *Richmond*, 122 Va. 328, 94 S. E. 803. The different conclusions reached by the decisions were due to the different circumstances of each case. In *Glenn* v. *West*, 106 Va. 356, 56 S. E. 143; *Commonwealth* v. *Wilson*, 141 Va. 116, 126 S. E. 220; and *Patterson* v. *Old Dominion Trust Co.*, 149 Va. 597, 140 S. E. 810, 141 S. E. 759, *Tabb* v. *Commonwealth*, *supra*, was approved and the rule of that case applied where similar questions were involved.

This necessitates a consideration of the facts and the law applied in the two leading cases.

In *Tabb* v. *Commonwealth*, *supra*, the State, the county of Henrico, and the city of Richmond sought to charge taxes assessed and accrued on land during the lifetime of a life tenant as liens on the estate of the remainderman. At the date of that decision, January 25, 1900, as now, the applicable State statute provided that: "There shall be a lien upon all real estate for the taxes assessed * * * thereon, prior to any other lien or encumbrance thereon." Virginia Code, 1887, section 636. Virginia Code, 1936, section 2454. In land sold at a delinquent tax sale, the purchaser acquired only such title as "was vested in the party assessed with the taxes or levies on account whereof the sale was made, at the commencement of the year for which said taxes and levies were assessed; or, in any person claiming under such party. * * *" Virginia Code, 1887, section 661. Virginia Code, 1936, section 2488.

The latter section then contained and now contains the following provision:

"Nothing in this section shall be so construed as to affect or divest the title of a tenant in reversion or remainder to any real estate which has been returned delinquent and sold on account of the default of the tenant for life in paying the taxes or levies assessed thereon."

Prior to its amendment in 1900, the charter of the city of Richmond followed the State statute in providing for the assessment of city taxes and prescribed, in language substantially the same as that of the Commonwealth, that "There shall be a lien on real estate for the city taxes assessed thereon." Section 82 of the charter provided that when land

was sold for taxes due the city and deed given and recorded therefor, "such estate shall be vested in the grantee as was vested in the party assessed with taxes on account whereof the sale was made." Section 83 provided that if the city purchased land at a tax sale and it was not redeemed by the owner or someone having a right to charge it with a debt, "the said corporation, or their assignees, shall acquire an absolute title to the same in fee." Acts of Assembly, 1869-70, pp. 120, *et seq.*

The court, after reviewing the statutes *in pari materia*, especially those relating to how the taxes should be collected and the lien thereon enforced by a sale of the land, held that taxes which accrue on the estate of a tenant for life are liens on the estate of the life tenant only and not on the estate of the remainderman and cannot be enforced against the latter.

The city of Richmond, immediately after the above decision and for the avowed purpose of avoiding its effect, procured an amendment to its charter. Acts of Assembly, 1899-1900, pages 944, *et seq.*

The amended charter contained the following pertinent sections:

(Sec. 75) "There shall be a lien on all real estate and on each and every interest therein for the city taxes assessed thereon from the commencement of the year for which they are assessed."

(Sec. 79) Any person having an interest in such land to have the right to redeem it within a specified time.

(Sec. 82) The purchaser of such land at a tax sale to take such estate as was vested in the party assessed with the taxes on account whereof the sale was made; but this section not to be construed to affect or impair the lien of the city on the real estate and on each and every interest therein, or the right of the city if it became a purchaser under the next succeeding section.

(Sec. 83) If the property be sold at a tax sale to the city, the city to thereby acquire an absolute title in fee to such real estate and every interest therein, for life, in reversion, in remainder, and otherwise.

In *Powers* v. *Richmond, supra,* decided January 24, 1918, it was held that section 75 of the charter of the city, as amended in 1900, read in connection with sections 79, 82, and 83, made such taxes a lien against the *res* without regard to individual ownership and that such lien was good against the estate of the remainderman, although he was not personally liable for the taxes.

When the *Tabb case* was decided, the charter provisions of the city of Norfolk were substantially the same as the charter provisions of Richmond. Acts of Assembly, 1883-1884, pages 41, *et seq.*

In 1906, Norfolk also procured amendments to its charter, provisions of which were almost identical with those of the amended charter of Richmond, except as shown below. Acts of Assembly, 1906, pages 254, *et seq.*

New sections 44 and 48 conformed to sections 75 and 79 of the amended Richmond charter.

Section 51 provided that the purchaser, who obtained a deed for any real estate sold for taxes, should stand vested of a fee simple title in such real estate. This section omitted any proviso that it should not be construed to affect or impair the lien of the city when it became a purchaser.

Section 52 provided that the city, as a purchaser, should take an absolute title in the fee.

The city of Norfolk, however, in 1918, and after the decision of *Powers* v. *Richmond, supra,* again had its charter amended. Acts of Assembly, 1918, pages 31, *et seq.*

New sections 89 and 93 were substantially in the same language as sections 44 and 48 of its 1906 charter and sections 75 and 79 of the amended Richmond charter of 1900.

New section 96 materially changed section 51. Instead of providing that the purchaser should receive a fee simple title in the real estate sold, the new section provided that the purchaser acquired only such right or title as "was vested in the person assessed with the taxes or levies on account *thereof* the sale was made at the commencement of the year for which said taxes or levies were assessed, or in any person claiming under such person. * * *" It contained no such conditional provision as was set forth in section 82 of the 1900 charter of

Richmond as to the effect of this section upon the lien or rights of the city if it became the purchaser.

New section 97 also materially changed former section 52. Instead of providing that the city should take an absolute fee in the real estate purchased by it, it prescribed that the city should take only such title as a purchaser took under the foregoing section.

Section 97 also further gave the city the right, at any time it might elect, "to enforce its lien for such taxes in a court of equity and in such suit become the purchaser of such real estate; * * *."

It seems rather apparent that although the city of Norfolk in 1906 undertook to follow the action of Richmond in amending its charter in 1900, because of the decision in *Tabb* v. *Commonwealth, supra,* it subsequently determined, after the decision in *Powers* v. *Richmond, supra,* that it would prefer to enforce the collection of delinquent taxes in the manner prescribed by its former charter provisions and avoid the harsh provisions imposed upon a remainderman in the charter amendments of 1906.

Thus we see that until 1906 the charter of Norfolk was similar to the charter of Richmond until the latter was amended in 1900. After 1906, the Norfolk and Richmond charters were similar in most respects. This continued until 1918. After the amendment of 1918, the Norfolk charter was again substantially the same as the Richmond charter prior to its amendment of 1900, the charter in effect at the date of the decision in *Tabb* v. *Commonwealth, supra,* except section 89 which prescribed that city taxes should be a lien on all real estate and on each and every interest therein. Therefore, the present charter of Norfolk differs materially from the charter of Richmond under review in *Powers* v. *Richmond, supra.* This, we think, will be clearly disclosed in the following recapitulation:

Section 82 of the amended Richmond charter, while providing that a purchaser, other than the city, may acquire only such title in the real estate as was vested in the person assessed for taxation, further states that this section shall not be construed to affect or impair the lien of the city or its

rights if it becomes a purchaser. There is no such provision in the present Norfolk charter.

Section 83 of the Richmond charter provides that the city shall acquire an absolute title in fee as the purchaser. The corresponding section in the Norfolk charter provides that the city shall take only such title as may be acquired by any other purchaser, that is, such as was vested in the person assessed with taxes or any person claiming under such person.

The city of Richmond, under the express provisions of its charter, can purchase land sold at a tax sale and acquire a fee simple title, while any other purchaser can acquire only such title as was vested in the person assessed with the taxes. On the other hand, the city of Norfolk, at a tax sale can acquire only such an interest as was vested in the person assessed with taxes, the same title as may be acquired by any other person. The Norfolk charter consequently contains no such proviso as is found in section 82 of the Richmond charter.

In construing the provisions of the former Richmond charter, wherein it was provided the city might receive a fee simple title while another purchaser would receive only the title of the person assessed with the taxes, the court in *Tabb* v. *Commonwealth, supra,* said that it could not have been intended by the legislature to allow the city to receive a fee simple title and give to other purchasers only the title of the person assessed with the taxes. This doubtless accounts for the Norfolk charter change in 1918, so as to provide that neither the city nor any other purchaser should acquire from a tax sale any greater title than was vested in the person assessed with the taxes. This accentuates the intention of the city of Norfolk to avoid the consequences of its charter changes of 1906 and the conclusion of this court reached in *Powers* v. *Richmond, supra.*

*United States* v. *Alabama,* 313 U. S. 274, 61 S. Ct. 1011, 85 L. Ed. 1327, relied on by the city, is not in point either upon the facts or the principles of law applicable. In that case it was held that a State statute making unpaid taxes a lien upon land was valid against subsequent mortgagees and purchasers, including the United States, although unenforceable against the latter without its consent. It was stressed that

the immunity of the United States was not predicated upon the validity of the lien, but upon its right to protection from proceedings against the Sovereign without its consent. We have no dispute with that finding. In the present case, the enforcement of the lien is not denied by any immunity of the present owner of the land, but because there is no means provided for its enforcement against the estate of that owner, a remainderman, in the land.

To realize the full significance of the situation, it is necessary for us to consider not only the particular section of the charter of the city of Norfolk giving the l i e n  b u t  a l l other sections which relate to the subject matter, including especially the sections relating to the enforcement of the lien.

The only method reserved to the city of Norfolk for the enforcement and collection of delinquent taxes is to sell the land to a purchaser or to purchase it itself. Neither the Norfolk charter nor the general law makes any provision for enforcement of the lien on the estate of the remainderman. In either event, whether the land be sold at a delinquent tax sale or in a proceeding at law or in equity, the purchaser can acquire only such title as stood in the name of the persons assessed with the taxes or in a person claiming under him. The person here assessed had only a life estate. Lowery does not claim under such person. He took title under the will of his father.

It is true that, under section 97 of its charter, Norfolk may elect to enforce its lien in a court of equity, but this provision adds nothing to the powers of the city since it has a right under the general law to proceed in equity or at law. Virginia Tax Code, as amended in 1938, section 403. The right to proceed in equity does not enlarge the lien of the city.

So, logically and irresistibly, we are brought to the conclusion that as the remedy for the enforcement of the lien for the taxes only extends to the estate of the tenant for life, the lien is only on the life estate. The reiteration in the related sections of the city charter of the extent of the

estate which can be sold and converted to taxes negatives any intent to affect the estate of the remainderman.

In this case, it is conceded that the interest of the life tenant has ceased. The acquisition of such title as she had will benefit no purchaser. The unpaid taxes accruing during her lifetime constituted a lien on her title. They are but clouds upon the title of the appellant.

The prayer of the appellant for relief should have been granted; the decree of the trial court will be reversed; and a final decree entered here for the appellant in accordance with the prayer of his bill.

*Reversed and final decree.*

CAMPBELL, C. J., dissenting.

I am unable to agree with the majority opinion.

James E. Lowery, appellant, filed his bill in chancery against the city of Norfolk. It alleges that appellant is the fee simple owner of two tracts of land, located in the city of Norfolk and derived by devise from his father; that appellee has instituted garnishment proceedings against appellant's property to enforce payment of certain delinquent taxes assessed against Susan B. Lowery, who was the life tenant of said land, and the prayer is:

"* * * that the court will decree and declare that the taxes levied and assessed by the city of Norfolk for the years 1929, 1930, 1931, 1932, 1933, and that proportionate part of 1934, embraced within the life tenancy of Susan Barrom Lowery against the aforesaid tracts of land, do not constitute valid claims and liens enforceable against complainant's estate in said land; that the court will decree and require the city of Norfolk to strike from its public records said taxes complained of, and that complainant may have all such other, further, and general relief as the nature of his case may require, and to equity shall seem meet."

The case was heard upon the bill of complaint and the answer of appellee. The trial court determined that the taxes assessed against the property were a lien on the remainder

interest of the appellant. From that decree this appeal was allowed.

The facts are not in dispute. In the year 1908, Thomas Lowery, father of appellant and Susan B. Lowery, died testate. By his will he devised two parcels of real estate in the city of Norfolk to his daughter, Susan, for life, with remainder to his surviving children. This real estate was duly assessed for city taxes in the name of the life tenant from the year 1909 to and including the year 1934. The life tenant paid the taxes for several years but failed to pay any taxes assessed against the land for the years from 1929 to 1934. Upon the death of the life tenant in 1934, appellant became the fee simple owner of the land.

It is admitted that the taxes were properly assessed and are unpaid and that no interest is involved in this case save that of appellant. The sole question for determination is whether under the provisions of section 89 of the present charter of the city of Norfolk, city taxes assessed against real estate in the name of Susan B. Lowery, a life tenant, constitute a lien on the remainder interest of the appellant in said real estate.

It is the contention of appellant that the court erred in holding that appellee has a lien upon the remainder interest, for unpaid taxes accruing against the real estate during the life-time of a life tenant. In support of this contention the decision of this court in *Tabb v. Commonwealth* (1900), 98 Va. 47, 34 S. E. 946, is relied upon.

It is true that in the *Tabb case* this court, speaking through Judge Riely, held that, for state and city of Richmond taxes assessed against the life tenant, the lien was only upon the life estate and did not extend to the remainder. It is to be observed, however, that the question involved in that case is not the question herein involved. At the time of that decision, both the statute and the city charter provided that "there shall be a lien on all real estate for the taxes and levies assessed thereon." Subsequent to the decision, the city of Richmond and the city of Norfolk had their charters amended so as to provide: "There shall be a lien on all

real estate *and on each and every interest therein* for city taxes assessed thereon." (Italics ours).

In the year 1918, appellee secured its present charter which contains this provision:

"Sec. 89. There shall be a lien on all real estate and on each and every interest therein for the City taxes assessed thereon, from the commencement of the year for which they were assessed and also for all local assessments which may be made thereon according to law."

In construing an identical provision of the charter of the city of Richmond, in the case of *Powers* v. *Richmond,* (1918), 122 Va. 328, 94 S. E. 803, Judge Prentis, after discussing the amendment to the Richmond charter, had this to say:

"* * * These amendments to the charter of the city were passed at the session of the legislature immediately succeeding the decision of the case of *Tabb* v. *Commonwealth,* 98 Va. 47, 34 S. E. 946, 51 L. R. A. 283, which held that neither State nor city taxes assessed on real estate held by a life tenant constituted a lien upon the interest of the remaindermen in property so assessed. The avowed purpose of securing these amendments to the charter was to secure to the city a lien on such interests, and to this end section 75 provides, that there shall be a lien on all real estate and on each and every interest therein for city taxes assessed thereon from the commencement of the year for which they are assessed; * * *"

In defining the status of the remaindermen, when the life tenant has failed to pay all taxes assessed against the property, Judge Prentis employed this language:

"The property here involved was as well the property of the remaindermen as the property of the life tenant, and it is for the benefit of the remaindermen that it is assessed in the name of the life tenant, and that the law imposes a personal liability therefor upon him as well as the duty of paying the taxes as they accrue; but if the life tenant fails in that duty, such failure cannot relieve the property of the remaindermen from the lien, though they are not personally liable for the taxes. Their property is liable, and Section 168 of the Consti-

tution requires that all property shall be taxed. So that the results in this case are strictly in accord with the intent of the Constitution, and to relieve the property in this case would be to exempt the estate of the remaindermen from taxation during the period when the life tenant held it."

Counsel for appellant seek to draw a distinction between the charter of the city of Richmond and the charter of the city of Norfolk by adverting to the charter provisions affecting the title acquired by a purchaser in case of a delinquent tax sale of the real estate. As heretofore stated, the question of title is not involved herein. The question of title can only arise when the land is sold under a decree of court in an equity suit. In that event the purchaser of the land will get such title as any other purchaser at a judicial sale obtains.

In addition to the *Tabb case, supra,* counsel for appellant rely upon the following cases to sustain their contention: *Commonwealth* v. *Wilson,* 141 Va. 116, 126 S. E. 220, *Glenn* v. *West,* 106 Va. 356, 56 S. E. 143; and *Patterson* v. *Old Dominion Co.,* 149 Va. 597, 141 S. E. 759. These cases did not involve any lien for taxes under any city charter provision similar to the lien in the case at bar, and, therefore, are not in point.

It conclusively appears that the amendment to the charter of the city of Norfolk, secured in 1918, was for the purpose of avoiding the decision in *Tabb* v. *Commonwealth, supra.* There is no doubt in my opinion that the avowed purpose has been accomplished. Under the provision of section 89 of its charter, the city acquires a lien against the *res,* without regard to the individual ownership of the land, whether it be for life or in remainder.

The conclusion reached is in conformity with the decision in *Powers* v. *Richmond, supra,* and it therefore follows that I am of the opinion that the decree should be affirmed.