Eggleston, J.,
 

 delivered the opinion of the court.
 

 William E. Quine, a resident of Clifton Forge, died in' 1908 leaving a will by which he devised certain real estate in the city to his widow, Mary E. Quine, for life, with remainder to their two daughters, Sadie and Susie Quine. The widow, who subsequently married James H. Hatcher, occupied the property until her death in 1949. For the years 1930 to 1943, both inclusive, the property was assessed for taxation in the name of “William E. Quine Estate.” For the years 1944 to 1949, both inclusive, it was assessed to “Mary, Sadie and Susie Quine.”
 

 Except for the years 1945 and 1946, none of the taxes due the city of Clifton Forge, and accruing during the life of the life tenant for the period from 1930 to 1949, were paid. On December 14,1936, the real estate was sold by the city treasurer at auction for delinquent taxes and bid in by the city. It has not been subsequently redeemed for the unpaid taxes.
 

 In October, 1949, the two daughters, Sadie Q. Ceroli and Susie Q. Tilman, who had in the meantime married and who
 
 *120
 
 were entitled to the remainder in fee in the property, filed their bill in the court below against the city of Clifton Forge, under the provisions of the Declaratory judgment Statute (Code, 1950, § 8-578
 
 ff.),
 
 to determine whether the taxes accruing during the lifetime of their mother, the life tenant, were a lien on the plaintiffs’ remainder interest in the property. From a decree holding that such unpaid taxes were a “valid lien” upon the property and that at the sale held on December 14, 1936, the city “took absolute title to the said real estate,” subject to the remaindermen’s right of redemption, the remaindermen have appealed.
 

 As stated in its written opinion the lower court based its decree upon the conclusion that it was the intent of the Gfeneral Assembly, as expressed in the various provisions of the charter of the city of Clifton Forge (Acts 1918, ch. 217, pp. 372, 381-384), “to expressly make the lien for city taxes against the res and which would survive the death of the life tenant,” and that such “unpaid taxes constitute a lien against the property of the complainants.”
 

 The pertinent provisions of the charter of the city of Clifton Forge, the lower court held, were “substantially the same” as those in the charter of the city of Richmond (Acts 1899-1900, ch. 864, pp. 944-6), and which this court held in
 
 Powers
 
 v.
 
 Richmond,
 
 122 Va. 328, 94 S. E. 803, were designed and intended to give the city of Richmond a lien on the interest of the remainderman for taxes accruing during the life of the life tenant.
 

 The appellant remaindermen contend that the pertinent provisions in the charter of the city of Clifton Forge are unlike those in the charter of the city of Richmond, and are substantially the same as those in the charter of the city of Norfolk (Acts 1918, ch. 34, pp. 31, 76-79),.which we held in
 
 Lowry
 
 v.
 
 Norfolk,
 
 179 Va. 495, 19 S. E. (2d) 684, did not give the latter city a lien on the interest of the remainderman for taxes accruing during the life of the life tenant.
 

 It is a well-settled and familiar principle that statutes imposing taxes are to be construed most strongly against the government and in favor of the citizen. They are not to be extended by implication beyond the clear import of the language used, and whenever there is a just doubt, that doubt should absolve the taxpayer from the burden.
 
 Commonwealth
 
 v.
 
 Stringfellow,
 
 173 Va. 284, 291, 4 S. E. (2d) 357, 360;
 
 Williams
 
 v.
 
 Richmond,
 
 177 Va. 477, 484,14 S. E. (2d) 287, 289,134 A. L. R. 833.
 

 
 *121
 
 In the light of this principle we are of opinion that it cannot he said that the pertinent sections of the Clifton Forge charter were clearly designed and intended to give that city a lien on the interest of the remainderman- for taxes accruing during the life of the life tenant.
 

 There are, we think, marked differences between the provisions in the charter of the city of Richmond and the corresponding provisions in the charter of the city of Clifton Forge. The latter are more similar to those found in the Norfolk city charter.
 

 Section 26 of the Clifton Forge charter provides: “There shall he a lien on real estate for the city taxes as assessed thereon from the commencement of the year for which they were assessed. * The council may require real estate in the city, delinquent for the non-payment of taxes or assessments, to be sold for said taxes and assessments, * * * and may cause a good sufficient deed to he made to the purchaser.”
 

 Section 75 of the Richmond charter reads: “There shall he a lien on all real estate and
 
 on each and every interest therein
 
 for the city taxes assessed thereon from the commencement of the year for which they are assessed. The city council may require such real estate in the city, delinquent for the non-payment of taxes, to he sold for said taxes, * * * . Such real estate shall he sold and may he redeemed under the provisions- hereinafter made.” (Italics supplied.)
 

 Section 89 of the Norfolk charter reads: “There shall be a lien on all real estate and
 
 on each and every interest therein
 
 for the city taxes assessed thereon, from the commencement of the year for which they were assessed, * * * . The council may require such real estate in the city delinquent for the non-payment of taxes, * * * to he sold for said taxes * * * .” (Italics supplied.)
 

 It will he observed that the provision found in both the Richmond and Norfolk charters which gives the city a lien for taxes “on each and every interest” in the land is not found in the Clifton Forge charter.
 

 The provision in section 26 of the Clifton Forge charter authorizing the council to “cause a good and sufficient deed to he made to the purchaser, ’ ’ does not define or specify the estate or interest to he conveyed, whether an estate in fee simple or merely the estate or interest of the person assessed with the taxes.
 

 
 *122
 
 Section 31 of the Clifton Forge charter gives the “owner of any real estate so sold, his heirs or assigns, or any person * * * otherwise interested therein,” the right to redeem the same in the prescribed manner.
 

 Section 79 of the Bichmond charter gives snch right of redemption to the “owner of any real estate so sold, his heirs or assigns, * * *
 
 or any person having interest in said real estate by way of
 
 reversion, remainder,
 
 or otherwise.”
 
 (Italics supplied.)
 

 The comparable provision found in section 93 of the Norfolk charter is practically the same as that in the Clifton Forge charter. In neither of the latter two charters is the right of redemption specifically given to a reversioner or remainderman.
 

 The charter of all three cities provide that when there is no oustide bid on real estate exposed for sale for delinquent taxes, it may be bid in or struck off to the city.
 

 Under section 33 of the Clifton Forge charter the purchaser of real estate sold for taxes, if the property be not redeemed within a specified time, may obtain in a prescribed manner “a conveyance of said real estate.”
 

 Section 34 of the Clifton Forge charter provides that any real estate purchased by the city at a delinquent tax sale, if not redeemed in the manner provided, “shall be disposed of by the city in such mode as the council may prescribe. ’ ’
 

 Under section 35 of the Clifton Forge charter, “When the purchaser of any real estate sold for the taxes, his heirs or assigns, shall have obtained a deed therefor, and within sixty days from the date of such deed shall have caused same to be recorded,
 
 such estate shall stand vested in the grantee
 
 in such deed, and his title shall not be subject to defeat, except by showing that the real estate was not subject to the taxes for which it was sold, or that the taxes for the year for which it was sold had been paid.” (Italics supplied.)
 

 Under section 82 of the Bichmond charter, when a purchaser (other than the city) of any real estate sold for taxes “shall have obtained a deed therefor, * * * such estate shall stand vested in the grantee * * * as was vested in the party assessed with the taxes * * * . *
 
 but nothing in this section shall be construed to affect or impair the lien of the city on the real estate and on each and every interest therein.”
 
 (Italics supplied.)
 

 
 *123
 
 Under section 83 of the Richmond charter, where such real estate is struck off to the city and is not redeemed, the city auditor causes to he recorded in the clerk’s office “a certificate of sale” for the property, “and thereupon the said corporation, or its assignees, shall acquire
 
 cm absolute title in fee to such real estate and every interest therein, for life, in reversion, in remainder and otherwise,
 
 subject to be defeated only by proof that the taxes for which said real estate was sold were not properly chargeable thereon, or that the taxes properly chargeable thereon had been paid at the time of the execution of such certificate.” (Italics supplied.)
 

 Under section 96 of the Norfolk charter when a purchaser (other than the city) of real estate sold for taxes “shall have obtained a deed therefor, * * * the right or title to such real estate shall stand vested in the grantee * * * as it was vested in the person assessed with the taxes. ’ ’ Provided, however, that if the party entitled to the real estate proves that the taxes for the non-payment of which it has been sold were not in arrears, “such deed shall be void.”
 

 Under section 97 of the Norfolk charter, where delinquent tax lands are purchased by the city and not redeemed within a specified time, the city treasurer shall cause to be recorded in the clerk’s office “a list of all the real estate purchased by the city at such sale, according to the facts given in each certificate of sale, * * * and thereupon the right or title to the real estate mentioned in said list shall stand vested in said city as it was vested in the person assessed with the taxes or levies on account whereof the sale was made, * * * as fully and completely as if a deed had been made to the city for each parcel of real estate mentioned in said list.”
 

 It is likewise provided in this section that the city “shall have the right to provide by ordinance for the disposition in any way that may seem proper to the council of any real estate which may have been purchased by it at any sale for delinquent taxes, and shall not have been redeemed.” This provision is substantially the same as that found in section 34 of the Clifton Forge charter,
 
 supra.
 

 Thus it will be observed that there is no provision in the charters of Clifton Forge and Norfolk comparable to that in section 83 of the Richmond charter to the effect that where real estate is struck off to the city at a sale for delinquent taxes, upon
 
 *124
 
 the recordation of a certificate of sale the city or its assigns “shall acquire an absolute title in fee to such real estate and every interest therein, for life, in reversion, in remainder and otherwise,” subject to be defeated only by proof that the taxes for which the property was sold were not properly chargeable thereon or had been paid.
 

 The nearest approach to that provision is found in section 35 of the Clifton Forge charter which provides that when the purchaser of “any real estate” sold for taxes shall have obtained a deed therefor and caused the same to be recorded, “such estate shall stand vested in the grantee in such deed, and his title shall not be subject to defeat,” except by showing that the real estate was not subject to the taxes for which it was sold, or that such taxes had been paid.
 

 Here the “estate” which vests in the grantee is not specified to be an “estate in fee” or “an absolute title in fee to such real estate and every interest therein, for life, in reversion, in re-, mainder and otherwise,” as is provided in section 83 of the Richmond charter. Consequently, the “estate” vesting in the grantee may be less than a fee. It may be only a life estate, or such other estate as the person assessed with the taxes may have had.
 

 Again, the provision in section 35 of the Clifton Forge charter that the grantee’s “title shall not be subject to defeat,” except for stated causes, adds nothing to the nature or quality of the estate acquired. It simply means that such title as the grantee has acquired shall be subject to defeat only for the stated causes.
 

 If it had been the purpose of the draftsman of the Clifton Forge charter to follow the provisions of the Richmond charter, it would have been easy to have done so. The provisions in the Richmond charter were written in 1900, for the obvious purpose of meeting the decision in
 
 Tabb
 
 v.
 
 Commonwealth,
 
 98 Va. 47, 34 S. E. 946, 51 L. R. A. 283, decided in January of that year, in which this court held that both city and State taxes accruing during the life of the life tenant were not a lien on the interest of the remainderman.
 

 In
 
 Powers
 
 v.
 
 Richmond, supra,
 
 decided in January, 1918, we held that the provisions of the Richmond charter, as amended, gave the city a lien on the interest of the remainderman for such accrued taxes, and were designed for that purpose.
 

 
 *125
 
 The General Assembly is presumed to have been aware of the purport of these decisions. And yet we do not find in the charter of the city of Clifton Forge, enacted in 1918, any express provision or language of “clear import” indicating an intent to give the city a lien upon the property itself and upon the interest of the remainderman, for taxes accruing during the life of the life tenant. Indeed, in some respects the provisions in the Clifton Forge charter are not as sweeping as those in the Norfolk charter. While section 89 of the Norfolk charter, like section 75 of the Richmond charter, gives the city “a lien on all real estate and on each and every interest therein for the city taxes assessed thereon,” section 26 of the Clifton Forge charter merely gives the city “a lien on real estate for the city taxes as assessed thereon.”
 

 To hold that under the provisions of its charter the city of Clifton Forge has a lien on the interest of the remainderman for taxes properly assessable to a life tenant would necessitate our going beyond the “clear import of the language used” in that statute, and this we may not do.
 
 Commonwealth
 
 v.
 
 Stringfellow, supra; Williams
 
 v.
 
 Richmond, supra.
 

 Of course, if the city did not have a lien on the interest of the remainderman for taxes due by the life tenant, it could not have acquired an “absolute title to the said real estate,” as the lower court held, at the sale of the property for delinquent taxes on December 14,1936.
 

 Nor is the case of the city of Clifton Forge strengthened by the fact that for the years 1944 to 1949, both inclusive, the property was assessed jointly to the life tenant and the remaindermen.
 

 In the first place, if the basic statutes do not give the city a lien on the remaindermen’s interest for taxes accruing during the life of the life tenant, the city could not acquire a lien on their interest for such taxes by the simple device of assessing the property in the names of the remaindermen.
 

 Moreover, the assessment of the property to the remaindermen during the life of the life tenant was plainly invalid. In
 
 Stark
 
 v.
 
 Norfolk,
 
 183 Va. 282, 32 S. E. (2d) 59, we pointed out that the statute (Tax Code, § 252, now Code, § 58-796) requires that “the owner of real estate” on the first day of January of each year, ‘ ‘ shall be assessed for the taxes for the year beginning
 
 *126
 
 on that day,” and that during the life of the life tenant he and not the remainderman is “the owner” to whom the property should be assessed within the meaning of the statute. This is so, we said, because “The word ‘owner’ includes any person who has the usufruct, control, or occupation of the land, whether his interest in it is an absolute fee, or an estate less than a fee.” (183 Va., at page 289, 32 S. E. (2d), at page 62.)
 

 Incidentally, it may be pointed out, that case further holds that during the life of the life tenant an assessment of the property in the name of the estate of the decedent (as the property in the present case was assessed for the years 1930 to 1943, both inclusive) was improper. It is true that subsequent to that decision Tax Code, § 264, was amended by the Acts of 1945, Ex. Sess., p. 75 (now Code, § 58-771), to permit the assessment of land to “the decedent’s estate until a transfer thereof,” and validating all such assessments theretofore made “if otherwise valid.” But neither an assessment to the estate of the decedent nor an assessment in the name of the life tenant makes the interest of the remainderman liable for the taxes due by the life tenant, when the underlying statutes create no such liability on th remainder estate. (183 Va., at page 289, 32 S. E. (2d), at page 62.)
 

 For these reasons the decree appealed from is reversed and a final decree will be entered here adjudicating that the city of Clifton Forge has no lien on the interest of the appellants’ in the real estate for the unpaid and delinquent taxes accruing during the life of the life tenant, that is, for the years 1930 to 1949, both inclusive, and that the sale of the property to the city on December 14, 1936, for delinquent taxes did not affect or impair the appellants’ interest in the real estate.
 

 Reversed and final decree.