# Richmond.

## GLENN v. WEST.

### January 17, 1907.

1. SALE FOR DELINQUENT TAXES—*Default of Life Tenant—What Title Passes.*—Where land is conveyed to a trustee to hold for the separate use of a married woman for life, and after her death to convey the remainder to such of her children as may survive her, and she is given the full use and enjoyment of the property for life, the burden of paying the current taxes devolves upon the married woman, and in case of default her life estate only can be sold. The land is required by statute to be listed in the name of the person who has the freehold in possession, and it is further provided that in case of a sale by the commonwealth under either section 661 or section 666 of the Code for default of the life tenant the title of the remainder-man shall not be affected or divested. He is under no obligation to pay the tax, and has no right to redeem in case of default of the life tenant. Listing the land in the name of the trustee for the married woman is in effect listing it in her name, and a purchaser from the commonwealth of land sold for her delinquency acquires title only to her life estate.

Error to a judgment of the Circuit Court of the city of Richmond in an action of ejectment. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*W. H. Werth* and *Samuel A. Anderson,* for the plaintiff in error.

*H. R. Pollard* and *E. M. Long,* for the defendant in error.

CARDWELL, J., delivered the opinion of the Court.

By deed dated the 27th of January, 1851, George W. Probst conveyed to R. T. Wicker, trustee, certain personal property and a house and lot on Byrd street, in the city of Richmond, in trust for the sole and separate use and benefit of Elizabeth Ann Probst, the wife of the grantor, during the term of her natural life, and for the benefit of the children of the grantor, then living or thereafter to be begotten, and after the death of the said Elizabeth Ann the trustee was to convey the property to the child or children of the grantor living at the time of the death of said Elizabeth Ann, by proper assignment and conveyance. The deed expressly stipulated that the trustee was to permit the said Elizabeth Ann Probst, during her natural life, to use and enjoy the property conveyed for the use and support of herself and the children of the grantor. It was further provided that the trustee, with the written assent of Elizabeth Ann Probst, might sell or exchange the property and hold the proceeds or the exchanged property on the terms of the original trust.

R. T. Wicker having died, the Hustings Court of the city of Richmond, on the 17th day of October, 1851, appointed Barnett Wicker trustee in said deed in the place of the deceased trustee, and Barnett Wicker, as substituted trustee, with the assent of Mrs. Probst, signified by her signing and sealing the deed, sold the house and lot on Byrd street, and by deed conveyed the same to the purchaser, John B. Davis. Subsequently Wicker, in accordance with the terms of his trust, invested the proceeds of the sale in a certain house and lot, known as No. 605 north Second street, in the city of Richmond, and the house and lot were conveyed to him by Frederick Anderson on the 15th day of March, 1855, upon the same trust contained in the first-named deed.

Mrs. Probst died in 1883, leaving Charles S. Probst as the only surviving child of herself and her deceased husband, George W. Probst. Charles S. Probst, on the 23d of July, 1886, con-

veyed the house and lot to Williard E. Brown; and Brown, on the 28th day of March, 1902, conveyed the same by deed to William B. West.

During the lifetime of Mrs. Probst, and for the years 1876, 1877 and 1878, the said house and lot became delinquent for taxes, the same having been listed for taxation in the name of "B. Wicker, trustee for E. A. Probst, &c.," and the said taxes not having been paid the property was sold for the delinquent taxes and bought in by the Commonwealth. Not having been redeemed as provided by law, Joseph E. Glenn made application for the purchase thereof, under section 666 of the code as amended by the Acts of 1897-'98, and on the 28th of November, 1899, Walter Christian, clerk of the Hustings Court of the city of Richmond, executed and delivered to Glenn a tax deed to the property.

B. Wicker, substituted trustee in the original deed of January, 1851, departed this life some years ago, and one James F. Phillips qualified as his administrator.

The above facts, which are not controverted, indicate the nature and extent of the title to the estate vested in B. Wicker, substituted trustee, etc., and the following additional facts are agreed in the record, viz: That the real estate in controversy was duly transferred on the land books of the city of Richmond from Anderson and wife and charged to and assessed for taxes in the name of Barnett Wicker, trustee for E. A. Probst, &c.; that it was so assessed from 1876 to 1886, inclusive; that the taxes so assessed for the years 1876, 1877, 1878, 1879 and 1886 became delinquent and were never paid except by Glenn . .; That upon the death of Mrs. Probst, Charles S. Probst, her only surviving child, took possession of the property and held the same until July 20, 1886, when he conveyed it by deed of that date to Willard E. Brown, whereupon the latter entered, took actual possession and held the same until November 28, 1899; but no conveyance of the title of the trustee was ever made to Charles S. Probst; that upon the recordation of the

deed from Charles S. Probst to Brown the property was trans-
ferred on the land books to him, and it was charged and assessed
with taxes from 1887 to 1899, inclusive, to and in the name
of Brown; that in each assessment the estate and interest as-
sessed was the same and of the same valuation, and in neither
did the assessment purport to be of and upon a life estate . . . ;
that the deed from Christian, clerk, to Glenn was duly executed,
acknowledged and delivered and recorded, and it embraces the
property in controversy; and that Glenn upon obtaining his
deed paid to Christian, clerk, the delinquent taxes above men-
tioned for the years 1876, 1877, 1878, 1879, 1886 and 1887.
It further appears that at October rules, 1901, Willard E.
Brown instituted an action of ejectment against Glenn in the
Circuit Court of the city of Richmond to recover the property
here involved, claiming in his declaration that he was entitled
to and owner of an estate "in fee-simple absolute"; and on a
trial of that action, upon an agreed state of facts submitted to
the court without a jury there was a judgment for Glenn, upon
the ground that the legal title to the estate sued for—that is, an
estate in fee-simple—which had been vested in B. Wicker,
trustee, under the deed from Anderson and wife, not having
been acquired by plaintiff, Brown, he could not maintain his
action of ejectment. During the pendency of that action Wil-
liam B. West became the purchaser of the property from Brown,
and the property was conveyed to West by Brown.

The case now before us is the sequel to *Glenn* v. *West,* 103
Va. 521, 49 S. E. 671, which was a suit in equity brought by
West to remove the cloud on the title to the house and lot in
controversy by reason of the tax deed therefor from Christian,
clerk, to Glenn, and the possession thereof having been acquired
by Glenn under his said deed the bill was dismissed without
prejudice to the right of West to take such further proceedings
to recover the property as he might be advised. West having
been adjudged by a decree of the Chancery Court of the city
of Richmond to be the equitable owner and entitled to have a

conveyance of the legal title to the property, and the same having been conveyed to him by a commissioner of the court by deed dated March 9, 1905, this action was instituted in the Circuit Court of Richmond city.

Upon the hearing of the cause it was submitted to the court, upon the facts above stated, without a jury, and judgment was rendered in favor of West, to which judgment Glenn obtained this writ of error.

The sole question presented is: What estate or interest, if any, passed to Glenn by his deed from Christian, clerk, of November 28, 1899?

In our view the decision of that question is practically controlled by the decision in *Tabb* v. *Commonwealth,* 98 Va. 47, 34 S. E. 946, 51 L. R. A. 283. In that case the properties in question were held by a trustee, named, in trust for the use and benefit of P. M. Tabb and wife during their joint lives and the life of the survivor, with remainder after the death of the survivor to their children living at his or her death and the descendants of such children, if any should be then dead, such descendants taking *per stirpes.* Willianna Tabb survived her husband, P. M. Tabb, and died November, 1897, leaving surviving her certain children and grandchildren, who, under the terms of the deed referred to, became the owners of the properties in fee-simple absolute. In that case the trustee took a legal estate *pur autre vie* in trust, and P. M. Tabb and his wife took an equitable life estate with the usufruct of the property, and the children and grandchildren took vested remainders as they came into being, which were liable to be defeated by their dying before P. M. Tabb and his wife, but were not liable to be defeated by any other event, and at the death of Willianna Tabb, the survivor, the trust ceased and the children and grandchildren took a fee-simple estate, freed of the trust. The only difference between the trusts in these two cases is that in the Tabb case, by the terms of the deed, the trust ceased upon the death of Mrs. Tabb, the survivor, while here the trustee, after

the death of Mrs. Probst, was required to convey the trust prop-
erty to the child or children surviving Mrs. Probst. In *Tabb* v.
*Commonwealth, supra,* the statutes under which the lands in
the Commonwealth are assessed for taxes and levies are reviewed
at length in an excellent opinion by Riely, J., and the conclu-
sion reached that taxes and levies, whether assessed by the state
or a municipal corporation, which accrue during the estate of a
tenant for life, are liens on the estate of the life tenant only
and not on the estate of the remaindermen, and cannot be en-
forced against the latter. In other words, the remedy for the
enforcement of liens for taxes and levies only extends to the
estate of the tenant for life, the lien therefor being only on the
life estate, and to that extent only was it intended to be given
by the law-making power. After observing that if the Com-
monwealth has become the purchaser of land sold by a treasurer
for delinquent taxes and it is thereafter resold to any person
under the provisions of section 666 the sale is only authorized
to be made "for the amount for which the sale to the Common-
wealth was made, together with such additional sums as would
have accrued from taxes and levies and interest if such real
estate had not been purchased by the Commonwealth, with
interest on the amount for which the sale was made," the opinion
says: "Upon such sale, the Commonwealth would therefore re-
ceive all unpaid taxes, levies and interest, and be reimbursed
all expenses incurred in respect thereto. If the sale, at which
the Commonwealth became the purchaser of the land, was made
on account of the default of the tenant for life in paying taxes
or levies accruing during his estate the purchaser from the Com-
monwealth would in that case acquire only the estate of the
tenant for life, which, if the contention so earnestly made in
argument were true, that the lien for taxes and levies was upon
the fee or entire interest in the land, would leave the reversion
or remainder in the Commonwealth under its purchase at the
sale by the treasurer, without any provision whatever by the
Legislature for revesting of the reversion or remainder in the

reversioner or remainderman, although the Commonwealth in the resale of the land under the provisions of section 666 has been fully reimbursed all unpaid taxes and levies, and all other charges and expense. This is conclusive . . . if aught else were necessary that the lien for taxes and levies is only upon the estate in the land of the person in whose name they are assessed. Otherwise the Commonwealth would be made a speculator in the lands of its citizens, which, it may be safely affirmed, was never intended by the Legislature."

In that case, as in the case at bar, the life tenant "was in the full possession and enjoyment of the entire property. Upon her rested the duty and obligation to pay the taxes thereon as they accrued." *Downey* v. *Strouse,* 101 Va. 226, 43 S. E. 348.

It is a well settled rule of law that the burden of paying current taxes is upon the life tenant rather than upon the remainderman. *Hagan* v. *Volney,* 147 Ill. 281, 35 N. E. 219; *Esterbrook* v. *Royon* (Ohio), 39 N. E. 808, 32 L. R. A. 805, and note; 1 Wash. on Real Property (6th Ed.), section 342; 2 Cooley on Taxation (3d Ed.), page 818; 27 Am. & Eng. Enc. Law, page 677.

It was a matter of no importance whether the property in question here was properly or improperly listed and assessed for taxation, or what was the nature of the title held by the trustee; for clearly it was intended by the Legislature, in the enactment of the statutes governing the assessing and taxing of property in the Commonwealth, as shown by the opinion in *Tabb* v. *Commonwealth, supra,* that such taxes should be assessed against the person or persons in the possession and enjoyment of the property, whereby the duty is imposed upon such person or persons to pay such taxes as are authorized by law to be levied upon the property. It was never intended in a case like this to impose the duty of paying taxes upon the trust property on the trustee, who holds merely the legal title, and not on another in the full possession and enjoyment of the property. The trustee had no right to the possession of the prop-

erty or to collect, receive or demand the rents or profits thereof, and no fund was provided over which he had any control whatsoever, out of which he might have paid the taxes. It therefore follows that the failure to pay the taxes on the property did not arise out of any default on the part of the trustee, but on the part of the life tenant, who alone could collect, receive or demand the rents, issues or profits arising from the trust property. It was certainly not intended to impose the duty upon the remainderman to pay the taxes, and it was manifestly for that reason that section 465 of the code provides that all lands shall be listed and assessed for taxation in the "name of the person who, by himself or his tenants, has the freehold in possession"; and further—section 661—that the sale of delinquent lands to purchasers from the Commonwealth, either under section 661 or section 666, shall not "be so construed as to affect or divest the title of the tenant in reversion or remainder to any real estate which has been returned delinquent and sold on account of the default of the tenant for life in paying the taxes or levies assessed thereon."

The listing of this property and the assessment of taxes thereon in the name of "B. Wicker, trustee for E. A. Probst, &c.," was in effect a listing of the property and the assessment of taxes thereon in the name of E. A. Probst, the life tenant, and the lien for the taxes as they accrued thereon during her life was a lien upon her estate in the land only. Upon the property being returned as delinquent for the taxes assessed thereon "the person in whose name said real estate was listed when sold to the Commonwealth, or other person who had the right to redeem before it was sold" may redeem, etc.; but no provision whatever is made that the remainderman may redeem. It would, therefore, be a travesty upon justice to hold that the plaintiff in error here acquired by his deed from Christian, clerk, not only the life estate of Mrs. Probst in the property, but the right of the remainderman to the fee, when the remainderman was not in default in the payment of the taxes for

which the property was sold, and would not have been allowed under the law to redeem the property had he desired or attempted to do so. If such a result could follow as is here contended for by plaintiff in error, in every instance of an equitable separate estate for life, with remainder in trust, the life tenant by permitting the trust subject to be sold for delinquent taxes may defeat the estate of the remaindermen (who may be infants or even unborn children) by purchasing the same at such tax sale, since the payment of the taxes at such sale by such person would have to be regarded as a purchase and not a redemption, for the life tenant having no right to redeem the land could become the purchaser thereof at a sale for delinquent taxes as well as any other person. The mere fact that it was the duty of B. Wicker, trustee, to make a conveyance of the legal title to this property to Charles S. Probst, the only surviving child of Mrs. Probst, after her death, does not at all distinguish this case from that of *Tabb* v. *Commonwealth, supra.* Upon the death of Mrs. Probst the possession of the property passed to Charles S. Probst, together with the right to call for the mere naked legal title outstanding in the trustee.

We are, therefore, of opinion that there is no error in the judgment of the Circuit Court, and it is affirmed.

*Affirmed.*