## Richmond

CITY OF RICHMOND, AND OTHERS v. EILEEN McKENNY,
AND OTHERS.

December 1, 1952.

Record No. 3955.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*J. Elliott Drinard, R. Carter Scott, Jr., Irvin G. Craig, Beverly H. Davis, Martha Conway, Max O. Laster* and *Beverley H. Randolph, Jr.,* for the appellants.

*Charles E. A. Knight* and *John B. Welsh,* for the appellees.

SMITH, J., delivered the opinion of the court.

This suit involves the validity of several tax assessments on three lots in the city of Richmond, which assessments are contested on the ground that they were not charged in the names of the owners of the land.

At the time of his death in 1929, John E. Doherty owned the three parcels of land involved, which are referred to herein as No. 312 East Main street and Nos. 200½ and 202 East Main street.

By his will, which was duly probated in the Chancery Court of the city of Richmond on January 18, 1929, John E. Doherty devised a life estate in these three lots to his brother, Simeon A. Doherty. He also devised a life estate in remainder (after the death of Simeon A. Doherty) in lot No. 312 East Main street to Eileen McKenny and gave her the right to dispose of this lot by a general testamentary power of appointment. The testator further devised a life estate in remainder (after the death of Simeon A. Doherty) in lots Nos. 200½ and 202 East Main street to Erina I. Hinchman and gave her the right to dispose of these two lots by a general testamentary power of appointment. In default of the exercise of the powers of appointment any lots not so disposed of were devised in fee in remainder to the heirs at law of the testator. John E. Doherty's executor had no power to sell any of the above mentioned lots.

The life tenant, Simeon A. Doherty, died in 1932 and the lots passed to Eileen McKenny and Erina I. Hinchman, respectively, for their lives in accordance with the terms of the will.

The city of Richmond assessed lot No. 312 East Main street in the name of John E. Doherty's Estate for the years 1934 through 1942 and lots Nos. 200½ and 202 East Main street were assessed in the name of John E. Doherty for the years 1939 through 1942. When this suit was filed none of the taxes represented by the above assessments had been paid.

In September, 1943, the city of Richmond filed its bill in equity against John E. Doherty's executor, the life tenants, and contingent remaindermen to enforce its alleged lien for the above taxes which had been returned delinquent. The suit was duly matured and on December 8, 1943, a decree was entered

referring the cause to a special commissioner to make certain inquiries and report to the court.

Sometime thereafter the commissioner entered the armed forces of the United States and did not file his report until March 1, 1946, after his return to civilian life. He reported on all matters submitted to him including a statement of the taxes due the city of Richmond.

Erina I. Hinchman, the life tenant of lots Nos. 200½ and 202 East Main street, and others interested as contingent remaindermen filed exceptions to the report of the special commissioner on the ground that the assessments against lots Nos. 200½ and 202 East Main street were void and of no effect, because the taxes should have been charged in the name of the owner of the two lots.

On July 2, 1946, the trial court entered a decree authorizing the special commissioner to receive sealed bids for lot No. 312 East Main street. On July 11, 1946, the commissioner reported an offer of $5,060, the acceptance of which he recommended and the court entered a decree accepting this offer. Thereafter, a partial distribution of the proceeds was made in which certain costs and the city taxes, interest, and penalties were paid.

On March 4, 1948, two of the contingent remaindermen, by leave of court, filed their petition alleging that the "erroneous assessment greatly operated to [their] prejudice * * * for had said property been properly assessed in the name of said * * * Erina I. Hinchman it would have * * * imposed a personal liability upon the said life tenant * * *." These petitioners further alleged that the sale of the lots and the collection from the proceeds of the erroneously assessed taxes would "take from them their rights and interest in said property without due process of law."

Upon the petition of Erina I. Hinchman and with the consent of all interested parties the trial court on February 25, 1949, entered a decree of sale of the two lots at Nos. 200½ and 202 East Main street and the residue of the proceeds was deposited to the credit of the court pending a final determination of the issue herein involved.

On July 26, 1949, Eileen McKenny, one of the non-resident defendants, by leave of court, filed her petition wherein she alleged that the "erroneous assessment greatly operated to the prejudice of your petitioner, * * *."

The validity of the service of process by publication and the subsequent proceedings thereunder were seriously attacked in the trial court, but by a stipulation of all interested parties filed in this court all questions involving the validity of the proceedings to sell No. 312 East Main street have been satisfactorily settled and are not now before us for decision. Only the validity of the tax assessments is involved here.

The Constitution of Virginia, Art. XIII, § 168, provides that all property, except as therein provided, shall be taxed. Art. XIII, § 169, requires that all real estate shall be assessed at its fair market value. Art. XIII, § 171, provides that real estate shall be segregated for local taxation exclusively.

Section 252 of the Tax Code (Code 1950, § 58-796) directs each commissioner of the revenue to "commence, annually, on the first day of January, and proceed without delay to ascertain all the real estate in his county or city, as the case may be, and the person to whom the same is chargeable with taxes on that day. The beginning of the tax year for the assessment of taxes on real estate shall be January the first and the *owner* of real estate on that day shall be assessed for the taxes for the year beginning on that day." (Italics supplied.) The word "owner" as used in this section includes any person who has the usufruct, control or occupation of the land, whether his interest in it is an absolute fee, or an estate less than a fee. *Banks* v. *County of Norfolk*, 191 Va. 463, 62 S. E. (2d) 46. Section 264 of the Tax Code (Code 1950, § 58-771) provides that "* * * When the owner has devised the land, the commissioner may charge the same to such person as may be beneficially entitled thereto under the will. * * *" It is well settled that the burden of paying taxes is upon the life tenant rather than upon the remainderman and it is the life tenant's duty to pay the taxes. *Stark* v. *Norfolk*, 183 Va. 282, 32 S. E. (2d) 59; *Commonwealth* v. *Wilson*, 141 Va. 116, 126 S. E. 220; *Glenn* v. *West*, 106 Va. 356, 56 S. E. 143.

Section 268 of the Tax Code, as it read on the date of the probate of the Doherty will, provided in part as follows:

"The clerk of every court in which judgments are required to be docketed shall make out a list * * * of all lands devised by will, which have been recorded in such court within the year ending on the thirty-first of December next preceding, which list shall state * * * the date of the will containing the devise,

when admitted to record, the names of the devisor and devisee, and the description of the land devised and such clerk shall deliver said list to the commissioner for his county or city on or before the fifteenth day of January in each year.''

█ In the light of the foregoing and in view of the decision of this court in *County of Albemarle* v. *Massey,* 183 Va. 310, 32 S. E. (2d) 228, we assume that the assessments herein involved were invalid when they were made.

In the *Massey Case* a certain tract of land, which had been conveyed to four grantees jointly, was thereafter assessed in the name of one grantee during his lifetime and at his death in the name of his estate. These assessments were held to be invalid for failure to list the land on the land book in the names of the co-tenants. The court reviewed the relevant statutes and concluded that since the commissioner of the revenue had not complied with the statute as to the transfer on the land books, ''It was therefore an invalid assessment.''

*Stark* v. *Norfolk, supra,* was decided at the same session of court at which the *Massey Case* was decided. This was a suit to enjoin the collection of back taxes on seven lots of land and to remove the lien of the assessments as a cloud upon the title of the complainants. We held that taxes assessed in the name of the estate of the deceased former owner, while the land was owned by a life tenant, did not constitute a lien on the interest of the complainants, who were the remaindermen.

The holding in the *Stark Case* did not establish any new principle of law but followed the theory of prior decisions of this court. *E. g., Lowery* v. *Norfolk,* 179 Va. 495, 19 S. E. (2d) 684, and the cases there cited. However, coming as it did at the same session at which the *Massey Case* was decided, it served to emphasize the possibility of considerable loss of taxes in the event of the failure of tax assessing officials to properly perform their duties.

In 1941, the case of *Old* v. *Norfolk,* 178 Va. 378, 17 S. E. (2d) 427, was decided. There it was held that in certain cases the failure to assess land in the name of the owner is not necessarily fatal to the assessment. The opinion cites *Stevenson* v. *Henkle,* 100 Va. 591, 42 S. E. 672, decided in 1902, as authority for the proposition ''that a person whose property is liable to assessment for taxes shall not be permitted to evade payment of

his just proportion of the public burden by any errors, omissions, or irregularities that do not prejudice his rights.''

The General Assembly at its first session following the decisions in the *Massey* and *Stark* cases amended the Tax Code by adding section 251-a. Acts, Extra Session, 1944/45, c. 76, p. 75. It seems apparent from a reading of section 251-a that the author of it was fully aware of these decisions and sought to change the result reached in the *Massey Case* and to state the law for future cases involving improper tax assessments. This was done by using the language of the *Old Case* to limit the curative effect of the statute to errors, omissions, or irregularities that do not prejudice the rights of contesting parties. Section 251-a was re-enacted in the new Code of 1950 as §§ 58-770 and 58-815. Nothing need be said of § 58-770 as the appellant relies entirely on § 58-815, which reads as follows:

''*No assessment of any real estate,* whether heretofore or hereafter made, shall be held to be invalid because of *any error, omission or irregularity* by the commissioner of the revenue or other assessing officer *in charging such real estate on the land book* unless it be shown by the person or persons contesting any such assessment that such error, omission or irregularity has operated to the prejudice of his or their rights.'' (Italics supplied.)

The question arises whether Code 1950, § 58-815 cures the defect in the assessments herein involved.

Section 251-a of the Tax Code first came under judicial review and was held to be constitutional by this court in *Norfolk* v. *Stephenson,* 185 Va. 305, 38 S. E. (2d) 570, 171 A.L.R. 1344, where it is stated that the purpose of the amendment is to prevent property owners from evading their fair share of the burden of taxation, because of error, omission or irregularity of the officers charged with the duty of assessing real estate, unless the error, omission or irregularity works to the prejudice of the owner in which event the curative provisions of the act will not be invoked.

The trial court was of the opinion that ''These assessments were no mere errors. They were the result of a wilful and total neglect of duty on the part of the assessing officers and are illegal assessments in every sense of that term.'' The chancellor was of opinion that the assessing officials had not made any ''*bona fide* attempt to ascertain the names of the real owners and

to assess them with the tax." Accordingly it was held that the failure to assess the lots according to law was not an error, omission or irregularity within the meaning of Code, § 58-815 and hence that section was not applicable to this case.

It is not apparent how the legislature could have made Code, § 58-815 more comprehensive than it is now. Such phrases as: "No assessment of any real estate,"; "any error, omission or irregularity * * * in charging such real estate on the land book"; contain language so broad that they cover every conceivable situation where an assessing official has failed to charge real estate on the land book according to law. The legislature says, in effect, that the interest of the public in the collection of taxes is more important than the failure of an assessing official to properly perform his duties and unless such failure on the part of the assessing officer has been prejudicial according to the terms of § 58-815, it will not invalidate the assessment.

It is our opinion that the failure of the assessors of the city of Richmond to assess the lots in the names of the life tenants was an error within the contemplation of § 58-815 and unless this has resulted in prejudice to the rights of one or more of the contestants, the error has been cured.

The life tenants and certain contingent remaindermen filed pleadings in this case contending that the tax assessments were invalid which constituted a contesting of such assessments within the meaning of § 58-815.

In view of the conclusion we have reached, it is unnecessary to decide whether or not the life tenants' rights have been prejudiced.

Section 251 of the Tax Code states that all real estate is subject to annual taxation according to law (Code 1950, § 58-760) and provides that there shall be a lien on such real estate for the payment of taxes and levies assessed thereon, prior to any other lien or encumbrance thereon, which lien shall continue to be a prior lien until actual payment of the taxes has been properly made. (Code 1950, § 58-762.) See also Michie Code 1942, § 2454 (Code 1950, § 58-1023). The Acts of 1926, c. 318, provided a new charter for the city of Richmond and § 67, p. 574, states that "There shall be a lien on all real estate and on each and every interest therein for the city taxes assessed thereon from the commencement of the year for which they are assessed." An identical provision in the city charter of March 6, 1900, was con-

strued and held constitutional in *Powers* v. *Richmond,* 122 Va. 328, 94 S. E. 803.

If the tax assessments herein involved are valid, they constitute a lien on the estate of the life tenants and, by virtue of the provision in the charter of the city of Richmond, they are also a lien on the interest of the remaindermen. As heretofore stated, the taxes herein should have been charged in the names of the life tenants, and if the city of Richmond had done this, the life tenants would be personally liable for the debt. *Banks* v. *County of Norfolk, supra; Stark* v. *Norfolk, supra.* In such a situation the contingent remaindermen, had they desired to do so, could have taken affirmative action to preserve their interests in the valuable real estate by paying the delinquent taxes and being subrogated to the rights of the city of Richmond against the life tenants. *Simmons* v. *Lyles,* 32 Gratt. (73 Va.) 752; Annotation, 61 A. L. R. 612; 18 M. J., Subrogation, § 34. Admittedly the interest of the contingent remaindermen here is extremely ephemeral and very unlikely to vest, but this does not justify a denial of the right to protect that interest.

█ The failure of the city of Richmond to properly charge the taxes in the names of the life tenants has precluded the remaindermen from paying such taxes and then proceeding in a personal action against the life tenants. Because of this, the rights of the contingent remaindermen have been prejudiced and the errors complained of have not been cured by the provisions of Code, § 58-815, therefore, the assessments are invalid.

Under the stipulation heretofore referred to, all issues in controversy at the date of this appeal have been settled, except the validity of the assessments, therefore, so much of the decree appealed from which held the tax assessments invalid is affirmed and the case is remanded for such action by the trial court as is necessary and not in conflict with the views expressed herein.

*Affirmed in part and remanded.*

WHITTLE, J., dissenting.

The majority opinion holds, "The failure of the city of Richmond to properly charge the taxes in the names of the life tenants has precluded the remaindermen from paying such taxes and then proceeding in a personal action against the life

tenants. Because of this, the rights of the contingent remainder-
men have been prejudiced and the errors complained of have
not been cured by the provisions of Code, § 58-815, therefore,
the assessments are invalid.''

I cannot agree with this holding. I do agree with the major-
ity when they say, ''It is not apparent how the legislature could
have made Code, § 58-815 more comprehensive than it is now''.
I agree, too, that the ''comprehensive'' statute was passed to
meet our holding in the *Massey* and *Stark* cases, and that the
language in the statute was taken from the opinion in the *Old
Case* for the express purpose of remedying the situation.

It is admitted that it was error for the commissioner of
the revenue to assess the land in the name of the Doherty estate.
It should have been charged on the land book in the name of the
life tenants. But the statute provides that, ''No assessment of
any real estate, * * * shall be held to be invalid because of *any
error,* omission or irregularity by the commissioner of the reve-
nue * * * in charging such real estate on the land book *unless it
be shown* by the person or persons contesting any such assess-
ment that such error, * * * has operated to the prejudice of his
or their rights.'' (Italics supplied)

The statute places the burden upon the contestants to show
prejudice. They must allege and prove actual prejudice, not
some theoretical prejudice that might be supposed to exist.

It is vaguely suggested in the pleadings that the contingent
remaindermen have been prejudiced but the record is void of
any evidence which shows prejudice to either the life tenants or
the contingent remaindermen.

The statement in the majority opinion that the contingent
remaindermen have been *precluded* ''from paying such taxes
and then proceeding in a personal action against the life ten-
ants'' is beyond the evidence. There is no such proof. It was
suggested in argument that had the error not been made this
course might have been open to the contingent remaindermen,
but there is no evidence to support the argument. In no event
did the error preclude the contingent remaindermen from pur-
suing this course if they felt that their ''ephemeral interest''
justified the risk.

There is no evidence to show that either the life tenants or
the contingent remaindermen have been misled in any way by the
error. On the contrary, it is shown that the parties knew the

provisions of the will, their interest in the land, and that the taxes had not been paid. The way was wide open for them to protect their interests if they desired to do so.

It is not sufficient to *suppose* that the contingent remaindermen would have acted differently if the assessment had been properly made. They had all the information that a proper assessment would have given them.

The majority opinion will tend to nullify this highly beneficial legislation. The decision not only denies appellant in the instant case the right to collect taxes which are justly due, but it will, in the future, permit whimsical excuses to act as barriers to the collection of taxes.

The opinion charges commissioners of the revenue with too high a degree of legal knowledge in the interpretation of wills. Volumes have been written by courts and text writers on the subject of who takes what in will cases. No branch of the law is more complex and troublesome, and we should not be too strict in dealing with laymen unless it is affirmatively shown that the interpretative error of the layman has "operated to the prejudice" of the contestants.

I would reverse the decree.

BUCHANAN, J., joins in this dissent.