**BOARD OF SUPERVISORS OF NORFOLK COUNTY, a political subdivision of the Commonwealth of VIRGINIA, Plaintiff,**

v.

**STANLEY BENDER & ASSOCIATES, INCORPORATED, a Delaware Corporation, Defendant.**

**Civ. A. No. 2868.**

United States District Court
E. D. Virginia,
Norfolk Division.

May 31, 1961.

Peter M. Axson, Jr., Portsmouth, Va., for plaintiff.

**840**

Kellam & Kellam, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

This action, originally instituted in the Circuit Court of Norfolk County, seeks the recovery of $14,911.77, plus interest and penalties, for real estate taxes alleged to be due by the defendant for the years 1954, 1955, 1956, 1957 and 1958. Removed to this Court, the matter has been submitted upon a stipulation of facts.

The plaintiff is a political subdivision of the Commonwealth of Virginia authorized by law to assess and collect taxes on real estate within the County of Norfolk. The United States, having acquired the title to certain real estate in said County, proceeded on October 22, 1952, to lease said property to the defendant under the provisions of the Military Leasing Act of 1947 (61 Stat. 774 et seq.) and the Wherry Military Housing Act of 1949, Title VIII of the National Housing Act, as amended (63 Stat. 570 et seq., 12 U.S.C.A. § 1748 et seq.). The lease was for a period of 75 years at a rental of $100.00 per year, and required the lessee, among other things, to (1) use the premises exclusively for erecting, maintaining and operating a rental housing project of approximately 159 units, substantially in accordance with detailed plans and specifications submitted by the Department of the Navy and approved by the Federal Housing Commissioner; (2) make application for mortgage insurance for said housing project under Title VIII of the National Housing Act, as amended, to be approved by the Federal Housing Administration, and to cause a mortgage to be actually endorsed for such insurance; (3) rent all units of the housing project to military and civilian personnel of the Army, Navy, Marine Corps or Air Force, assigned to duty at the Norfolk Naval Shipyard, Portsmouth, Virginia, as may be designated by the Commander thereof; (4) use and occupy the premises subject to rules and regulations as the Commander of the Shipyard may reasonably prescribe for military requirements for safety and security purposes, consistent with the use of said premises for housing; (4) permit control over maximum allowable rents and monthly deposits in a reserve fund for replacements to continue during the entire period of 75 years; (5) prohibit the transfer or assignment of the lease without the approval of the United States; and (6) agree that the buildings, and other improvements, erected by the lessee, constituting the housing project, shall, as completed, become real estate and part of the leased premises, and property of the United States of America to effectuate the purposes of Title VIII of the National Housing Act.

On October 23, 1952, defendant executed a deed of trust to the American Security and Trust Company, the repayment of which was, and is now, insured by the Federal Housing Administration. In 1954 the deed of trust was acquired by the Federal National Mortgage Association, an agency of the United States, and has been continuously held by the latter since that date.

In executing the deed of trust and causing the same to be insured by the Federal Housing Administration, defendant issued and delivered all of its preferred stock to the Federal Housing Administration. Defendant's corporate charter was granted under the laws of the State of Delaware on May 21, 1952, and defendant thereafter qualified to do business in Virginia. The charter contained the typical provisions as set forth in the model form prescribed by the Federal Housing Administration which, for all practical purposes, made the corporation subject to the direction and control of the preferred stockholder, Federal Housing Administration.

The first year that defendant's leasehold interest became subject to real estate taxation was 1954. It is conceded that, in 1954 and continuously thereafter, defendant operated and managed its leasehold as a Wherry rental housing project for military personnel, known as

Stanley Court Apartments. Plaintiff's assessed the value of the buildings and improvements at $300,500.00. For each of the years 1954, 1955 and 1956, plaintiff transmitted its bill in the sum of $6,160.25 on the official form used for that purpose by the County of Norfolk. Defendant, without knowledge as to any error in said bills, paid the same as and when they respectively fell due.

On October 4, 1957, plaintiff issued supplemental real estate tax bills for the years 1954, 1955 and 1956, based upon the same assessment, but containing the following notation:

> "this property was assessed in D. C. Mosq. and should be assessed in D. C. sanitation—Common Law Order Book 52."

By reason of the plaintiff's error, additional taxes were due by defendant for each of the years stated above. Defendant thereupon paid the principal amount of the increased taxes, but declined to pay the penalties or interest thereon as the error was solely attributable to plaintiff. One of the issues for determination in this case is the liability, if any, of defendant for any portion of the interest and penalties on the supplemental tax for the years 1954, 1955 and 1956. For reasons expressed herein, we do not believe that plaintiff can recover any interest or penalties under the circumstances of this case.

■ Turning to the years 1957 and 1958, the tax liability of defendant is determined by the legal effect of § 511 of Public Law 1020 of the 84th Congress, enacted August 7, 1956, 42 U.S.C.A. § 1594 note. During each of these years a determination was made by the District Public Works Officer for the Fifth Naval District, lawfully acting as the duly authorized designee of the Secretary of Defense, as to the appropriate sums to be deducted from the tax billings on account of payments by the United States to or for the benefit of the plaintiff. Under the provisions of § 511 as aforesaid, the Secretary of Defense or his designee may deduct from the taxes due on said property an amount equal to (1) any payments made by the Federal Government to the local taxing or other public agencies involved with respect to such property, plus (2) such amount as may be appropriated for any expenditures made by the Federal Government or the lessee for the provision or maintenance of streets, sidewalks, curbs, gutters, sewers, lighting, snow removal or any other services or facilities which are customarily provided by the state, county, city, or other local taxing authority with respect to such other similar property.

Plaintiff refuses to recognize or allow any credit for the amounts so determined by the Secretary of Defense or his designee, but does not contend that the amounts designated as credits are in any sense arbitrary or unreasonable.

For the year 1957 plaintiff submitted its real estate tax bill in the sum of $7,512.50. The Secretary of Defense determined the amount deductible as $6,601.27, leaving a balance of $911.23. A valid check for this amount was tendered by defendant prior to the due date of the tax bill, but has not been deposited or returned. For the year 1958, the tax bill was in the sum of $6,301.50 and the deductible items aggregated $7,033.28 leaving no tax due. It is agreed that if defendant is correct in its contention, plaintiff may now use the check in the sum of $911.23, but will not be entitled to interest and penalties. On the other hand, if plaintiff prevails, interest and penalties may be charged.

Plaintiff's argument may be reduced to one main contention, namely, that the property is not used for "public purposes" and hence is subject to taxation without deduction. It is urged that a private corporation leasing apartments for profit destroys the immunity from taxation, even though the real estate is owned by the Federal Government.

Prior to 1957 the authority to assess and collect real estate taxes on Wherry Housing projects was controlled by Offutt Housing Company v. County of Sar-

py, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151, where it is said:

"This is one of those cases in which Congress has seen fit not to express itself unequivocally. It has preferred to use general language and thereby requires the judiciary to apply this general language to a specific problem. To that end we must resort to whatever aids to interpretation the legislation in its entirety and its history provide. Charged as we are with this function, we have concluded that the more persuasive construction of the statute, however flickering and feeble the light afforded for extracting its meaning, is that the States were to be permitted to tax private interests, like those of this petitioner, in housing projects located on areas subject to the federal power of 'exclusive legislation.' We do not hold that Congress has relinquished this power over these areas. We hold only that Congress, in the exercise of this power, has permitted such state taxation as is involved in the present case."

To prevent both the collection of real property taxes and the payments for street maintenance, lighting, etc., Congress immediately amended the Act. A portion of the House Report, 1956 U.S. Code Cong. and Adm.News, Vol. 3, p. 4556, sets forth the reason for said action as follows:

"The recent decision of the Supreme Court of the United States in the case of Offutt Housing Company v. County of Sarpy (May 28, 1956) upheld the right of local taxing officials in the State of Nebraska to levy certain State and county 'personal property' taxes against the lessee's interest in a title VIII project, measured by the full value of the buildings and improvements. However, as a large portion of the projects have not been subject to State and local taxes, payments in lieu of taxes have frequently been made to local taxing officials in exchange for usual services, such as schools, furnished to the projects. Also, many expenditures have been made by the Federal Government for streets, utilities, schools, and other services normally furnished by taxing bodies. As tax payments for a project normally have an ultimate effect on the rentals paid by military and civilian personnel at the military installations, it is important that no payments be made to communities which would constitute a windfall over and above normal taxes. Consequently, it is very important to assure that the project does not duplicate payments for services furnished to it. This duplication would be avoided under the provision in the bill for deductions from tax payments, as explained above."

The logic of such amendment is further disclosed in the Senate Report of the Committee on Banking and Currency, Review of Military Housing Programs, 85th Congress, 1st Session, pp. 17–20.

■ Plaintiff overlooks the basic fact that no tax may be levied upon property owned by the United States in the absence of Congressional consent. This is so stated in Offutt. It is still true. As was said in Harsh California Corp. v. County of San Bernardino, 9 Cir., 262 F.2d 626:

"The tax collector must perform his duties not only in accord with state law but also in accordance with valid, paramount federal law. The collection of a tax in disregard of the latter renders such collection illegal."

The Harsh case recognizes that § 511, under which the nullifying deduction was determined, is paramount, and the mere fact that there is no administrative or judicial mode provided by state statute whereby a deduction may be established is wholly immaterial. Cf. Air Base Housing, Inc. v. Spokane County, 56 Wash.2d 642, 354 P.2d 903. In an opinion of the Attorney General of Virginia dated September 26, 1957, it is said that

local taxing authorities should recognize the determination of the Secretary of Defense. This statement assumes, of course, that such determination is not arbitrary or unreasonable.

This is not a case in which the state, or political subdivision, is taxing the use of the property, as distinguished from the property itself. We are not called upon to consider the case of City of Detroit v. Murray Corporation, 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441, which relates to the "use" phase of taxing problems where there was no effort to hold the United States or its property accountable. We have, in this case, a direct tax against the property itself.

In the recent case of Moses Lake Homes v. Grant County, 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66, decided April 17, 1961, the Supreme Court had before it the question relating to the taxation of Wherry Act leasehold interests which the Washington Supreme Court had found to be taxable at "the full value of the buildings and improvements" on the land. In reversing the Court of Appeals for the Ninth Circuit, it was said:

"If anything is settled in the law, it is that a State may not discriminate against the Federal Government or its lessees. See, e. g., Phillips [Chemical] Co. v. Dumas School District, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384; United States v. City of Detroit, 355 U.S. 466, 473, 78 S.Ct. 474, 478, 2 L.Ed. 2d 424; City of Detroit v. Murray Corp., 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441. In United States v. City of Detroit, supra, we said:

'It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals.' 355 U.S., at page 473, 78 S.Ct. [474] at page 478."

Section 183 of the Constitution of Virginia was amended on November 5, 1946, thus eliminating the exemption of property owned directly or indirectly by the United States. The same section provides in part:

"Whenever any building or land, or part thereof, mentioned in this section, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town."

There can be little doubt as to the "public purpose" of Wherry Act housing projects. Their purpose is to provide housing accommodations in critical defense housing areas for the military and such civilians as may be related to military activities. The fact that these housing projects are operated and maintained by quasi-private corporations under long-term lease agreements with the United States does not, in any degree, lessen the "public purpose."

This is not a case in which the defendant contends that the buildings and improvements are not subject to taxation as a part and parcel of the real estate. As in Moses Lake Homes it is clear that there would be discrimination against the leasehold on federally-owned lands if the plaintiff is permitted to disregard the effect of § 511 of Public Law 1020, 42 U.S.C.A. § 1594 note. The singular purpose of § 511 is to adjust the possible discrimination. States and communities, under adequate state tax statutes, are thus enabled to obtain from Wherry Act projects such proper taxes and assessments which, with payments and expenditures by the Federal Government for services in connection with the projects, would equal the taxes and assessments collected by the local taxing officials from other similar property. Section 511 is manifestly constitutional and affords a means of equalizing an otherwise possible discriminatory effect.

Adverting to the claim for penalties and interest occasioned by plaintiff's error in assessing the property in

the wrong district for the years 1954, 1955 and 1956, we think it equally clear that no penalties or interest may be assessed and collected under the facts of this case. While there can be no doubt that the error, omission or irregularity of the Commissioner of Revenue or other assessing officer does not render the assessment invalid under § 58–815, Code of Virginia 1950, it is well settled that a regular and timely assessment is a prerequisite to the right of levy and collection. Commonwealth v. United Cigarette Mach. Co., 120 Va. 835, 92 S.E. 901. Immediately upon the billing of the supplemental assessment correcting the error, defendant paid in full the principal amount of the tax. Sections 58–963 and 58–964 provide for the imposition of penalties and interest and, in turn, presuppose the existence of a *delinquent* taxpayer. The defendant herein was never delinquent. Admitting that the penalties and interest cannot be relieved, Rixey's Ex'rs v. Commonwealth, 125 Va. 337, 99 S.E. 573, 101 S.E. 404, this does not suggest that the penalties and interest ever attach in view of the requirement of assessment and billing as specified by § 58–960. Of course, an error may be so obvious as to charge the owner with notice of same, in which event penalties and interest would be imposed, but the error in this case was one in which knowledge of same could not, under any circumstance, be chargeable to defendant. Under any construction of § 58–815 penalties could not be collected as the error operated to the prejudice of the defendant. City of Richmond v. McKenny, 194 Va. 427, 73 S.E.2d 414. It may be persuasively argued that, with respect to interest, the defendant retained the use of money which was justly due plaintiff for the years in question, but the general rule appears to be that a taxpayer is not liable for interest unless and until he is in default, and he is not in default where the tax has never been levied. 85 C.J.S. Taxation § 1054(d), p. 639; 51 Am.Jur. § 954, p. 839.

The action will be dismissed. Counsel for defendant will prepare and present, after an opportunity for inspection has been afforded opposing counsel, an appropriate judgment order, which said order shall direct plaintiff to apply the proceeds of the check in the sum of $911.23 in full payment of real estate taxes for the year 1957 assessed against the defendant on the real property which is the subject matter of this controversy.