# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Alice Nancy Adair

v.

Frank J. Kuhn, Jr.

April 12, 2004

Case No. CH03-697

BY JUDGE WILLIAM H. LEDBETTER, JR.

This case was tried without a jury on April 7, 2004, after which the court made the following findings and rulings.

1. Pertinent to this litigation, the will of Alice Sullivan Kuhn, the decedent, dated March 5, 1993, bequeathed to Alice Nancy Adair, the decedent's daughter and plaintiff, various items of tangible personal property. In Article IV(A), the decedent devised her 100-acre farm in Paytes to her husband, Frank J. Kuhn, Jr., defendant, herein Kuhn, for his life with the remainder to Adair. Adair was named executrix.

2. The 1993 will was admitted to probate on June 26, 2001. Adair qualified as executrix.

3. Kuhn's cross-bill is in the nature of an issue *devisavit vel non*. It seeks to impeach the 1993 will. It is untimely. Upon reflection, however, the court is of the opinion that the untimeliness of that claim cannot be considered by the court because it was not raised as a defense in Adair's pleadings as required by Virginia Code § 8.01-235.

4. Because Kuhn was "a party to the [probate] proceeding," he is precluded from attacking, or impeaching, the 1993 will, Virginia Code § 64.1-88. Kuhn went to the clerk's office with Adair on June 29, 2001, to offer the will for probate. He wrote the check that paid the clerk's fees. Admitting a will to probate is a judicial act. The clerk acts in a judicial capacity in admitting a will to probate. *Church v. Hutchings*, 209 Va. 158, 163 S.E.2d 178 (1968). Kuhn clearly participated in that judicial proceeding and consequently, as the word "party" is used in § 64.1-88, he was a party to that proceeding.

At trial, Kuhn admitted that he went to the clerk's office with Adair. He testified further, however, that he was not sure at the time whether Adair was offering the 1993 will or a later will for probate. That assertion is belied by other evidence that the court found more persuasive.

5. Notwithstanding the dispositive ruling restated in # 4 above, the court addressed the merits of Kuhn's claim that the decedent executed a will in 1998 at the JAG office at Fort Belvoir and that it was later destroyed by Adair. Kuhn failed to convincingly establish the existence of a valid 1998 will or its contents; and he failed to rebut the presumption, applicable in this case, that, if there was a 1998 will, it was destroyed by the decedent, the testatrix, *animo revocandi*. See *Brown v. Harding*, 225 Va. 624 (1983).

6. Under the 1993 will, which has been established as the last known will and testament of the decedent, Kuhn, as life tenant, has an obligation to pay the taxes on the property. *Richmond v. McKenny*, 194 Va. 427, 73 S.E.2d 414 (1952). The evidence at trial established that the real estate taxes are now current.

7. Under the 1993 will, Kuhn, as life tenant, is entitled to the full use and enjoyment of the property during his lifetime, the only restriction being that the interest of the remainderman will not be permanently diminished in value by Kuhn's neglecting to do that which an ordinary prudent person would do to preserve his own property. 51 Am. Jur. 2d, *Life Tenants and Remaindermen*, §§ 27 and 28; also, 28 Am. Jur. 2d, *Estates*, § 62. The evidence at trial established that Kuhn has repaired damage caused by a leaky roof and that the house is now sufficiently "wind and water tight."

8. The court did not rule on Adair's contention that Kuhn has a duty to insure the property against loss or damage for her benefit as well as his. That matter was taken under advisement. On that issue, the court makes the following ruling.

There are no Virginia cases deciding the specific issue whether a life tenant is obligated to insure the property for the benefit of the remainderman. The prevailing view, though, is that when a life tenant insures the property in his name and for his benefit alone and pays the premiums, he is entitled to all the proceeds of the insurance upon a loss. 51 Am. Jur. 2d, *Life Tenants and Remainderman*, § 182. A primary reason for such result, say the courts, is that the life tenant is not answerable to the remainderman if the property is damaged or destroyed by an occurrence not his fault. Some authorities specifically hold that a life tenant is not bound to insure the property for the benefit of the remainderman. The authorities also point out that both the life tenant and the remainderman have insurable interests in the property and each can insure for himself.

Accordingly, the court is of the opinion that Kuhn does not have to insure the property for the benefit of Adair, and it follows that he does not have to name her as a loss payee or an insured on his individual policy. Adair may obtain her own insurance to protect against loss of her remainder interest.

9. Adair claims that Kuhn will not allow her to retrieve from the home certain items of tangible personal property specifically bequeathed to her in the decedent's will. At the conclusion of the trial, the parties and counsel agreed that Adair could enter the premises at a specified time and date to remove her personal belongings.

As to some of the bequests, Kuhn contends that he jointly owned them with the decedent, hence the decedent had no power to bequeath them to Adair. This issue will be continued so that the parties and counsel can particularize which items are disputed, and the court will conduct another hearing to resolve that issue if the parties cannot reach agreement.